# Exhibit A

 **Wolters Kluwer**

**CT Corporation**
**Service of Process Notification**
03/28/2023
CT Log Number 543519998

## Service of Process Transmittal Summary

**TO:**  Shelley Wisniewski, Lead Consultant
ALLSTATE INSURANCE COMPANY
100 E PALATINE RD STE 201
WHEELING, IL 60090-6528

**RE:**  **Process Served in California**

**FOR:**  Allstate Insurance Company  (Domestic State: IL)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | JASIBEL CANCHOLA, individually and on behalf of all others similarly situated; CARLOS OCHOA, individually and on behalf of all others similarly situated vs. ALLSTATE INSURACE COMPANY |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Cover Sheet, Attachment |
| **COURT/AGENCY:** | Orange County - Superior Court, CA<br>Case # 30202301314857CUOECXC |
| **NATURE OF ACTION:** | Insurance Litigation |
| **PROCESS SERVED ON:** | C T Corporation System, GLENDALE, CA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 03/28/2023 at 13:14 |
| **JURISDICTION SERVED:** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 calendar days after this summons and legal papers are served on you (Document(s) may contain additional answer dates) |
| **ATTORNEY(S)/SENDER(S):** | Gretchen M. Nelson, Esq.<br>Gabriel S. Barenfeld, Nelson & Fraenkel<br>601 So. Figueroa St., Ste. 2050<br>Los Angeles, CA 90017<br>844-622-6469 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 03/29/2023, Expected Purge Date: 04/03/2023<br><br>Image SOP |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>330 N BRAND BLVD<br>STE 700<br>GLENDALE, CA 91203<br>877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the

**CT Corporation**
**Service of Process Notification**
03/28/2023
CT Log Number 543519998

included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



## PROCESS SERVER DELIVERY DETAILS

**Date:**                                      Tue, Mar 28, 2023
**Server Name:**                               Janney and Janney

| Entity Served | ALLSTATE INSURANCE COMPANY |
|---|---|
| Case Number | 30-2023-01314857-CU-OE-CXC |
| Jurisdiction | CA |

| Inserts |
|---|
|  |



Electronically Filed by Superior Court of California, County of Orange, 03/22/2023 10:54:08 AM.
30-2023-01314857-CU-OE-CXC - ROA# 4 - DAVID H. YAMASAKI, Clerk of the Court By A. Thau, Deputy Clerk.
#:25

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
ALLSTATE INSURANCE COMPANY, an Illinois corporation; and
DOES 1 though 100,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* JASIBEL CANCHOLA,
individually and on behalf of all others similarly situated; CARLOS
OCHOA, individually and on behalf of all other similarly situated,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | Orange County Superior Court<br>Civil Complex Center<br>751 West Santa Ana Blvd.<br>Santa Ana, CA 92701 | CASE NUMBER:<br>*(Número del Caso):*<br>30-2023-01314857-CU-OE-CXC<br><br>Judge Randall J. Sherman |
|---|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Gabriel S. Barenfeld, Nelson & Fraenkel, 601 So. Figueroa St., Ste. 2050, Los Angeles, CA 90017, (844) 622-6469

| DATE: 03/22/2023<br>*(Fecha)* | DAVID H. YAMASAKI, Clerk, by<br>Clerk of the Court *(Secretario)* | A. THAU , Deputy<br>*(Adjunto)* |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Allstate Insurance Company, an Illinois corporation

under: ☒ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*    MAR 2 8 2023

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

Electronically Filed by Superior Court of California, County of Orange, 05/22/2023 10:37:08 AM.
30-2023-01314857-CU-OE-CXC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By A. Thau, Deputy Clerk.
#:26

Gretchen M. Nelson, SBN 112566
gnelson@nflawfirm.com
Gabriel S. Barenfeld, SBN 224146
gbarenfeld@nflawfirm.com
**NELSON & FRAENKEL LLP**
601 S. Figueroa St., Suite 2050
Los Angeles, CA 90017
Telephone No.: (844) 622-6469
Facsimile No.: (213) 622-6019

*Attorneys for Plaintiffs*

*[Additional Counsel for Plaintiffs Listed on Signature Page]*

Assigned for all purposes:
Judge Randall J. Sherman
Dept. CX105

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ORANGE

JASIBEL CANCHOLA, individually and on behalf of all others similarly situated; CARLOS OCHOA, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

ALLSTATE INSURACE COMPANY, an Illinois corporation; and DOES 1 through 100,

Defendants.

Case No. <u>30-2023-01314857</u>-CU-OE-CXC

**CLASS ACTION**

**PLAINTIFFS' CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**

1. **Labor Code Section 2802 - Failure To Reimburse For Necessary Expenditures Incurred;**

**DEMAND FOR JURY TRIAL**

## TABLE OF CONTENTS

I. SUMMARY OF THE ACTION ................................................................................................ 1

II. PARTIES ............................................................................................................................... 4

III. JURISDICTION AND VENUE ............................................................................................. 5

IV. BACKGROUND ................................................................................................................... 5

    A.    California law prevents employers from passing the expense of running their businesses to their workers. ................................................................................... 5

    B.    Allstate exclusive agents operate Allstate's business for Allstate's account and not for their own accounts. ............................................................................... 6

        i.    Allstate owns the Allstate agencies, including the book of business, that the exclusive agents work in and pay all the expenses for. ................................... 8

        ii.    Allstate exclusive agents are economically dependent on Allstate. .............. 10

        iii.    Other facts showing that Allstate treats exclusive agents in California as employees for purposes of section 2802. ........................................................ 11

    C.    Examples of the categories expenses Allstate requires the exclusive agents to bear to do Allstate's business. ............................................................................. 14

V. CLASS ALLEGATIONS ..................................................................................................... 15

VI. CLAIMS FOR RELIEF ...................................................................................................... 17

1    Plaintiffs Jasibel Canchola and Carlos Ochoa, individually and on behalf of all others

2  similarly situated, allege as follows upon personal knowledge and upon information and belief

3  based upon the investigation of counsel:

4  **I.      SUMMARY OF THE ACTION**

5        1.      Defendant Allstate Insurance Company ("Allstate") and its affiliated insurance

6  companies sell insurance in California. Allstate relies on an integrated distribution system of

7  insurance agents working in Allstate agencies, the internet, and call centers to sell insurance in

8  California. This allows customers to interact with Allstate when, where, and how they want: via the

9  internet, insurance agents, call centers or a mix of all three.

10        2.      Allstate classifies these insurance agents as independent contractors under California

11  law and requires them to bear all or nearly all expenses to sell Allstate insurance and service

12  Allstate's customers. At the same time, however, Allstate binds the agents to its distribution strategy

13  by requiring them to sell exclusively for Allstate and calls them "exclusive agents."

14        3.      This exclusive agent relationship gives rise to a danger of Allstate abusing the

15  independent contractor designation. Allstate can structure the relationship so that the exclusive

16  agents are, essentially, at-will sales employees who work in Allstate-owned agencies yet shift the

17  expenses of running Allstate's agencies onto the exclusive agents under the guise of an independent

18  contractor relationship.

19        4.      That abuse materialized here. Plaintiffs and putative class members are former and

20  current Allstate exclusive agents whom Allstate promised to treat as independent contractors who

21  would "own their own insurance agency" and could build equity in "their agency." All exclusive

22  agents, Plaintiffs included, relied on Allstate's promise to make significant financial investments,

23  including paying for office space and hiring employees along with other costs.

24        5.      Reality proved to be different. Although Allstate labeled the exclusive agents as

25  independent contractors, it structured the relationship so that the exclusive agents do not own or

26  operate a business independent of Allstate's integrated distribution network. Exclusive agents pay

27  the expenses of an agency over which Allstate owns and retains all necessary control. Allstate owns

28

1

---

1  the book of business, the customers, and all the other valuable information necessary to run the
2  business—even the phone numbers the exclusive agents use to do business.

3    6.    Allstate also retained the right to terminate any exclusive agent "at will," and thus,
4  for any reason or no reason at all. If Allstate or the agent terminates the exclusive agent relationship,
5  Allstate keeps the agency, and the exclusive agent loses his or her investment, including all business
6  expenses. Allstate further requires that the exclusive agents agree to noncompete provisions to
7  restrict their ability to work in the business of selling insurance if they leave or are terminated.

8    7.    Other factors further demonstrate the exclusive agents' lack of economic
9  independence and Allstate's ultimate control over its business, including the agents' opportunity for
10  profit or loss.

11    8.    Allstate controls what products the exclusive agents can sell, the terms, and the price.
12  For example, to further its business interests, Allstate recently stopped exclusive agents from selling
13  homeowners, condo, and exclusive lines, thus severely impairing the agents' ability to compete in
14  the market for new business or from earning any commissions on these lines of business.

15    9.    Allstate alone decides what to pay the exclusive agents and can change the agents'
16  compensation at any time or for any reason. The agents have no right or ability to negotiate for their
17  compensation and the compensation is untethered to the work performed. For example, for no other
18  reason other than to further its own business interests and profits, Allstate recently cut the
19  commissions it pays to exclusive agents on auto policies by 84%.

20    10.    The exclusive agents bear the financial brunt of Allstate's business decisions. The
21  expenses Allstate expected the exclusive agents to bear to run the Allstate agencies did not change,
22  with the result that Allstate slashing commissions and restricting what products exclusive agents
23  could sell either severely reduced the agents' income or resulted in the agents taking losses based on
24  Allstate's business needs. When exclusive agents tried to compensate for these cuts and restrictions
25  by selling more of the products Allstate allowed them to sell, Allstate warned them that they were
26  selling too much.

27    11.    Allstate tells agents that they can sell their agency, but that is also false. An exclusive
28  agent has no ownership rights to sell, and no sale of an Allstate agency ever occurs. Instead, Allstate

2

1   decides whether to allow a third party to pay the exclusive agent to step into his or her role of

2   servicing Allstate's book of business for a commission, and Allstate controls this process from start

3   to finish. An agent does not have as an alternative keeping his/her book of business if he/she

4   chooses to leave Allstate. The book of business belongs to Allstate and stays at Allstate if an agent

5   leaves or is terminated.

6       12.    Allstate also controls the exclusive agents' online presence as part of its integrated

7   distribution system. Exclusive agents must maintain an Allstate website that allows existing or

8   potential customers to communicate either with the agent or directly with Allstate, including by

9   obtaining online quotes for policies directly from Allstate or its affiliates.

10      13.    Put otherwise, Plaintiffs and other exclusive agents work continuously and regularly

11  for Allstate as part of Allstate's integrated distribution system in Allstate-branded agencies that

12  Allstate owns to further Allstate's core business of selling insurance; they rely on their earnings

13  from Allstate to support themselves and their families; they can be terminated at will by Allstate;

14  they lose any investment they made by paying expenses for the Allstate agency they worked in

15  upon termination; and their total pay is substantially influenced by Allstate who controls what

16  products they sell, on what terms, in what amounts, and for what level of compensation.

17      14.    Plaintiffs' experience reflects this reality. After Allstate restricted the products they

18  could sell and slashed compensation, both Plaintiffs' jobs became economically unfeasible and they

19  lost everything. Both Plaintiffs also have unpaid debts because of the unreimbursed expenses they

20  incurred working for Allstate, such as the lease for an Allstate-branded agency. Upon information

21  and belief, other exclusive agents who would lose everything if they left, simply hope that Allstate

22  reverses its austerity measures before their financial situation becomes untenable.

23      15.    In no meaningful way, therefore, is an Allstate exclusive agent an independent

24  contractor delivering services as part of an independent business for his or her own account. Instead,

25  an exclusive agent is just an Allstate salesperson no different than any other sales employee paid on

26  a commission basis with one key exception: the exclusive agents, not Allstate, bears all the expense

27  doing Allstate's business.

28

16.    But California Labor Code section 2802 prevents employers, like Allstate, from protecting their bottom lines and shifting the cost and risk of their business onto their workers by passing business expenses to their employees.

17.    Because in no sense do Plaintiffs or putative class members run independent businesses for their own accounts, they are employees for purposes of section 2802 and are owed reimbursement from Defendants for the expenses Allstate required and expected them to incur to build and maintain Allstate's business.

18.    Plaintiffs, like all putative class members, wanted to be treated as independent contractors but were not. California Labor Code section 2802 requires Defendants to reimburse Plaintiff and class members for the business expenses they incurred during the relevant time period. Additionally, through this lawsuit, Plaintiffs seek to end Defendants' unlawful and unfair business activities and have Defendants treat the putative class consistent with their independent contractor designation under California law, and obtain all other relief Plaintiffs and the putative class are entitled to.

## II.    PARTIES

19.    Defendant Allstate Insurance Company ("Allstate") is an insurance company organized under the laws of the State of Illinois having both its statutory home office and main administrative office located in Northbrook, Illinois. Allstate and its affiliated group of insurance companies and non-insurance companies engage in the business of selling property, casualty, and life insurance throughout the State of California.

20.    Upon information and belief, DOES 1 though 100 are either affiliated with Allstate or manage the Allstate exclusive agents in California, or both. Plaintiffs are unaware of the true names and capacities of defendants DOES 1 through 100, however, and they will amend this complaint when those names and/or capacities become known to Plaintiffs.

21.    In this Complaint, Plaintiffs refer to Allstate and DOES 1 through 100 as the "Allstate Defendants" or "Defendants."

22.    At all relevant times, the Defendants were engaged in selling insurance in California, including in this County.

PLAINTIFFS' CLASS ACTION COMPLAINT

23.     Plaintiff Jasibel Canchola is a citizen of the State of California who was an exclusive agent for Allstate from June 1, 2022 until February 4, 2023 and worked at an Allstate' agency located at 4945 Yorba Ranch Road, Yorba Linda, CA 92887.

24.     Plaintiff Carlos Ochoa is a citizen of the State of California who was an exclusive agent for Allstate from July 1, 2022 until January 3, 2023 and worked at an Allstate' agency located at 610 E Francis Street, Ontario, CA 91761.

25.     In this Complaint, Plaintiffs refer to "exclusive agents" or "agents" to mean themselves and the class of putative class members in the State of California.

## III.    JURISDICTION AND VENUE

26.     The Court has personal jurisdiction over all Defendants as they do substantial business in the State of California and in this County. At least one Defendant, Allstate, is licensed to sell insurance and does sell insurance in the State of California and this County.

27.     This is a class action brought pursuant to Code of Civil Procedure, section 382, and this Court has jurisdiction over the Plaintiffs' claims because the amount in controversy exceeds this court's jurisdictional minimum.

28.     Venue is proper under Code of Civil Procedure, sections 395, subd. (a), because the defendant does not reside in this State and Plaintiff Jasibel Canchola resides in this county.

## IV.    BACKGROUND

### A.    California law prevents employers from passing the expense of running their businesses to their workers.

29.     Labor Code section 2802 represents protective social welfare legislation that prevents employers from passing the expenses of their businesses to their workers.

30.     Specifically, Labor Code section 2802 states that "an employer shall indemnify his or her employees for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer."

31.     The test for employee status under section 2802 is governed by *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341. (Lab. Code, § 2783, subd. (a).)

1    32.    The California Supreme Court has emphasized that *Borello* applies a statutory

2    purpose test in order to determine which classification (employee or independent contractor) best

3    effectuates the underlying legislative intent and objective of the statutory scheme at issue.

4    (*Dynamex Operations W. v. Superior Court* (2018) 4 Cal.5th 903, 934.)

5    33.    *Borello's* emphasis on statutory purpose is broader than and sets it apart from the

6    traditional common-law agency test for employee status that gives considerable weight to an

7    employer's right to control the manner and means by which the product is accomplished.

8    (*Dynamex, supra,* 4 Cal.5th at p. 935.)

9    **B.    Allstate exclusive agents operate Allstate's business for Allstate's account and**

10    **not for their own accounts.**

11    34.    Allstate and its affiliated companies sell property, casualty, and life insurance in

12    California.

13    35.    Allstate's core business is selling insurance. The core business of the other Allstate

14    Defendants is also selling insurance.

15    36.    Key factors that determine Allstate's success in selling its insurance products are its

16    product offerings, brand recognition, financial strength, and price. The exclusive agents control

17    none of these factors.

18    37.    Allstate runs a profitable business selling insurance and paid over $11.8 billion in

19    dividends over the past three years alone—$4.1 billion in 2022, $3.6 billion in 2021, and $4.1

20    billion in 2020—that ultimately benefit its parent, The Allstate Corporation, a publicly traded

21    company. The Allstate Corporation is a holding company with no significant business operations of

22    its own, and it relies on dividends from Allstate as one of the principal sources of cash to pay

23    shareholder dividends and to meet its obligations.

24    38.    Allstate relies on an integrated distribution system of the internet, call centers, and

25    exclusive agents in Allstate-branded agencies, to sell its insurance products and service customers

26    in California. This integrated distribution system furthers Allstate's core strategy of allowing

27    customers to interact with Allstate when, where, and how they want.

28

1    39.    Allstate calls its insurance agents in California "exclusive agents" to differentiate

2    them from independent insurance agents.

3    40.    There is no dispute in the insurance industry that independent insurance agents are

4    independent contractors. They own their agencies, including their agency's books of business. They

5    sell for multiple competing companies and select the company to place their clients with based on

6    their clients' needs and the amount of commission. If the independent agent terminates his or her

7    relationship with a company, the agent retains the book of business and the relationship with the

8    policyholders, including all the policyholders' information, and can place that client with a different

9    company. They operate their own business for their own accounts.

10    41.    Independent insurance agents also work in offices branded with their individual

11    company name, not the names of the companies they sell insurance for, and they generally are not

12    integrated into an insurance company's distribution system.

13    42.    Insurance companies also generally do not maintain any management structure to

14    manage or otherwise supervise the independent agents they work with. Instead, the companies work

15    to develop relationships with their independent agents to encourage them to sell their products

16    instead of their competitors' products.

17    43.    Allstate does not on information and belief hire established independent agents who

18    own their own books of business to work as exclusive agents in California.

19    44.    Instead, Allstate generally recruits people having no prior experience running an

20    agency or selling insurance to work as an Allstate exclusive agent.

21    45.    Potential Allstate exclusive agents are people looking for jobs who apply to be an

22    Allstate exclusive agent. They then undergo an interview and evaluation process. Allstate advertises

23    the job of Allstate exclusive agent as a career position on its website along with a link where job

24    seekers can fill out an application. A license to sell insurance is not a prerequisite to be an Allstate

25    exclusive agent, and Allstate permits the exclusive agent's licensure after Allstate decides to hire

26    him or her.

27    46.    All new hires sign a form Allstate exclusive agent agreement with Allstate and its

28    affiliated companies to sell Allstate insurance products in California. Allstate drafts the form

7

1  exclusive agent agreement and the terms are non-negotiable, including the classification of the

2  exclusive agent as an independent contractor.

3      47.    Allstate uses these form exclusive agent agreements, and other policies and practices

4  commonly applicable to all exclusive agents, to impose an uniform structure on the Allstate-

5  exclusive agent relationship that does not vary by agent.

6      i.    **Allstate owns the Allstate agencies, including the book of business, that the**

7          **exclusive agents work in and pay all the expenses for.**

8      48.    Allstate advertises its "Allstate exclusive agent" position as an opportunity to "own

9  your agency" and that agents, by paying the agency expenses, will "earn equity in the business you

10  build as an Allstate agency owner." (See e.g., https://www.allstatecorporation.com/careers.aspx and

11  https://www.allstate.com/lp/allstateagent/index.htm (last accessed, 3/6/2023).) These statements are

12  false and misleading. Allstate exclusive agents do not own a business independent of Allstate's

13  business.

14      49.    Allstate owns the expirations and all policyholder information of the Allstate agency

15  the exclusive agent works in —i.e., the agency's "book of business" and only income producing

16  asset.

17      50.    Expirations are an insurance agency's records about policyholders and the agency's

18  most valuable asset to carrying on the business of insurance. Plaintiffs and all other exclusive agents

19  in the putative class have no ownership rights in the expirations or any other aspect of the book of

20  business of the Allstate agency they work in. The book of business and all other policyholder

21  information are Allstate's wholly owned property that Allstate considers to be its exclusive and

22  confidential property. Indeed, Allstate maintains that it would suffer irreparable damage if a former

23  exclusive agent kept its book of business after termination.

24      51.    Allstate considers the customers of the Allstate agency the exclusive agent works in

25  to be Allstate's customers, not the exclusive agents' customers. Allstate also requires all exclusive

26  agents to agree to non-compete clauses where, upon termination, the exclusive agent agrees to not

27  contact Allstate policyholders or to locate an office within one-mile of the Allstate office they

28  worked in.

52.    Allstate requires the exclusive agents to pay the expenses to maintain the Allstate agency and grow Allstate's business.

53.    Allstate will not allow an Allstate exclusive agent to also own an independent insurance agency because Allstate considers that both a breach of the Exclusive Agency Agreement and a conflict of interest. Allstate also retains the right to restrict the exclusive agents from selling insurance of any kind for any other company.

54.    If the exclusive agent has an opportunity to sell a line of insurance Allstate does not offer, Allstate requires them to place the business through Ivantage, a brokerage owned by an Allstate affiliate who takes a commission on the business, thus allowing its affiliates, and ultimately Allstate's parent company, to profit from the sale.

55.    All telephone numbers the Allstate exclusive agents use to do business, and that the exclusive agents pay the expense for, are also property of Allstate that the agent must surrender to Allstate upon demand after termination.

56.    Allstate tells Allstate exclusive agents that "you can sell the business when you retire."[1] That is false. An Allstate exclusive agent has no right to sell the Allstate agency they work in to anyone because Allstate owns the agency.

57.    Instead, Allstate allows its exclusive agents to have a third party pay them step into their role working in Allstate's agency. Allstate, not the exclusive agents, controls this process from start to finish. Allstate recruits persons to take over existing Allstate books of business and has absolute discretion to deny a transfer for any reason or no reason.

58.    Allstate also reserves the right to terminate an exclusive agent with or without cause on ninety days notice. Upon Allstate giving notice, the exclusive agent must immediately cease all work as an Allstate agent.

59.    Upon an exclusive agent's termination, the Allstate agency, including the book of business the agent paid all the expenses to build and maintain, remains with Allstate and the exclusive agent keeps nothing.

---

[1] https://www.allstatecorporation.com/careers.aspx

9

60.    Because Allstate has integrated the exclusive agents into its distribution businesses, Allstate's investment in its Allstate agencies' business to grow that business dwarfs the investment by any exclusive agent. By way of example, Allstate spends tens of millions of dollars yearly to create a branded business in which agents perform one part of the sales function, including (i) advertising on television, the internet, and the radio; (ii) maintaining a website that includes an "agent finder" tool to allow people to find Allstate agents close to their home; (iii) maintaining an app that allows policyholders to communicate directly with their Allstate agent; and (iv) maintaining Allstate-branded agent websites that allow potential customers to obtain online quotes directly from Allstate or to communicate with the agent or Allstate. Allstate also has employees whose job is to "drive product strategy across Allstate digital assets," including the agent sites.

        **ii.**    **Allstate exclusive agents are economically dependent on Allstate.**

61.    Allstate tells both aspiring and current exclusive agents that they enjoy unlimited earning potential and their success depends on their entrepreneurial skills.

62.    The Allstate exclusive agents are economically dependent, however, upon Allstate and their opportunity for profit or loss ultimately hinges on Allstate's decisions about its business needs.

63.    Allstate expects its exclusive agents to sell exclusively for Allstate and to devote all the time they spend selling insurance to selling Allstate's products and servicing Allstate customers.

64.    Allstate pays its exclusive agents a mix of commissions and bonuses. Allstate sets the exclusive agents' compensation and can lower it at any time, without any negotiation or input from the agents.

65.    Recently, Allstate cut the commissions it would pay its exclusive agents by 84% for all standard auto, non-standard auto, and non-specialty auto. Previously, the rate was 25% (comprised of a 9% base commission plus 16% variable compensation). Allstate eliminated the variable compensation and set the commission rate at 4%.

66.    Allstate also restricted sales of its homeowners, condo, and commercial lines, which not only eliminated those income sources for exclusive agents but also interferes with the ability for

1   Allstate exclusive agents to bundle for products for customers or earning additional bonuses for

2   bundling those products.

3       67.     Allstate further implemented policies to either slow or even discourage California

4   consumers from either purchasing Allstate insurance products or renewing existing Allstate

5   insurance coverages. For example, Allstate required policyholders to pay at least 50% of premiums

6   for both new and renewal auto policies. Allstate also announced that it was reducing its advertising

7   spending to reduce sales.

8       68.     The Allstate exclusive agents had no input into Allstate's decision to cut their

9   commissions and had no option but to accept them. Likewise, the Allstate exclusive agents had no

10   input into any other policies Allstate implemented to slow or discourage sales and had no option but

11   to accept them.

12       69.     Allstate's commission cuts and other policies have had and continue to have a severe

13   negative economic impact on all Allstate exclusive agents through no fault of their own. The cuts

14   are tethered only to Allstate's financial goals rather than any fundamental change in the job Allstate

15   hires the agents to do. Yet Allstate's ownership and control over the relationship means that

16   Allstate's unilateral actions have in one fell swoop rendered many of the agencies its exclusive

17   agents work in and depend on for their income either materially less profitable or unprofitable.

18       **iii.**    **Other facts showing that Allstate treats exclusive agents in California as**

19             **employees for purposes of section 2802.**

20       70.     Allstate exclusive agents simply have a job running Allstate's agencies to sell

21   Allstate policies and service Allstate policyholders "credited" to their account as part of Allstate's

22   integrated distribution system.

23       71.     Allstate advertises the job of exclusive agent as a career position at Allstate. There is

24   no term and an exclusive agent can spend their careers working for Allstate to sell Allstate products

25   and service Allstate customers.

26       72.     Allstate integrates the exclusive agents into Allstate's integrated sales distribution

27   system. The exclusive agents sit at the bottom of Allstate's top-down hierarchy of managers whose

28   full-time job is to supervise the exclusive agents, including sales activities, to drive production and

1  meet Allstate's sales goals. Each exclusive agent reports to a Sales Market Leader, who reports to
2  another Allstate manager, all of whom are employees and all of whom are part of a hierarchy of
3  Allstate managers who ultimately report to an officer of Allstate.

4      73.    This hierarchy reflects how the exclusive agents are not working in businesses
5  separate from Allstate. Rather, exclusive agents work with other Allstate employees to form one
6  part of Allstate's integrated sales distribution system.

7      74.    Allstate has the right to determine the location of the Allstate agency and has the
8  right to approve or veto the exclusive agent's proposed location for the Allstate office. Allstate also
9  retains the right to determine whether an exclusive agent can open an office at a second location.

10     75.    Allstate monitors the size of its Allstate agencies and can decide whether it wants
11 larger or smaller agencies. In recent years, Allstate decided that it was better for business to have
12 fewer but larger agencies, and it built larger agencies by merging books of business from terminated
13 exclusive agents and having its current exclusive agents run these larger agencies.

14     76.    Allstate controls whether an agent can share an office with another Allstate agent,
15 and it can veto an exclusive agent's decision to reduce costs by sharing offices.

16     77.    Allstate expects the undivided full-time service of each exclusive agent to selling
17 Allstate products and servicing Allstate customers.

18     78.    While agents do not work in Allstate corporate headquarters, Allstate requires
19 exclusive agents to work in a Allstate-branded agency that must have a standard and uniform look.
20 Allstate retains control over the appearance of the agency to ensure the Allstate brand is
21 prominently displayed, both exterior and interior, and that the Allstate agency meets whatever
22 criteria Allstate sets for professional appearance.

23     79.    Allstate has the right to control the hours that the Allstate agency is open for
24 business. For example, the Allstate currently requires that the exclusive agents keep the Allstate
25 agencies open for no less than 45 hours each week.

26     80.    Allstate has the right to physically inspect any Allstate agency to ensure compliance
27 with its standards. Allstate also has the right to require exclusive agents to meet with its
28 representatives at Allstate's request to discuss any business topics.

81.     Allstate controls the exclusive agents' online presence. Allstate requires the exclusive agents to do business using an approved Allstate-branded email address and an Allstate-branded and controlled agency website. Allstate monitors the agents' email and website presence, and Allstate retains the exclusive agent's website, email, and email address when the agent terminates.

82.     Allstate expects the exclusive agents to hire employees to work in the Allstate agency. While Allstate refuses to pay for the expense of those employees, it requires those employees to sign non-competes that restrict the employee's ability to work or to compete against Allstate after termination.

83.     Allstate has the right to determine who can work in the Allstate agency. For example, an exclusive agent may want to hire a licensed person as an employee in the Allstate agency, but Allstate can veto that hire by refusing to appoint them.

84.     Allstate has created a job position for workers in Allstate agencies called Licensed Sales Professional. Allstate recruits Licensed Sales Professionals on its website, where it maintains a link for them to apply for that position as a staff member for an Allstate exclusive agent.

85.     Allstate trains the exclusive agents on how to do their jobs, including on how to run an Allstate insurance agency, sell insurance, and service Allstate customers. Training is not limited to teaching agents about Allstate products or regulatory compliance issues.

86.     Allstate can, and does, monitor and drive agent activities.

87.     Allstate also has the right to require agents to do activities without compensation.

88.     Allstate can require exclusive agents, particularly new agents, to submit business plans to Allstate's managers stating the various sales activities the agent intends to pursue.

89.     Allstate managers also have yearly meetings with the exclusive agents where they lay out written sales plans that Allstate expect the agents to follow and then monitors the exclusive agent's progress.

90.     The Allstate Defendants also monitor the exclusive agents' sales activities, not just production (premiums).

13

91.     Allstate's rights over the exclusive agent and the Allstate agency remain the same as those listed above regardless of whether the agent incorporates. If the exclusive agent incorporates, Allstate has developed a "C version" of the Exclusive Agent Agreement that is not materially different than the "S version" signed exclusive agents who operate as sole proprietorships. In both versions, Allstate contracts with the key person—the exclusive agent— and  "C version" is only with the exclusive agent's company in name. The material terms of the two agreements are also identical in all respects, with the only difference being that Allstate asserts control over material aspects of the incorporated entity to cement its control.

**C.     Examples of the categories of expenses Allstate requires the exclusive agents to bear to do Allstate's business.**

92.     Defendants require their exclusive agents to pay, without reimbursement, various categories expenses necessary to operate the Allstate's agencies. These expenses include, among other, the following:

    a.   The expense of the office space for the agency, such as the lease. An exclusive agent cannot work from a home office.

    b.   The expense of branding the interior and exterior of the Allstate agency.

    c.   The expense of licensed and appointed staff that Allstate expects to work in the Allstate agency. Indeed, upon information and belief, Allstate maintains criteria for the number of staff that it expects to work in an Allstate agency based on the number of Allstate policies in force.

    d.   The expenses of the errors and omissions policy Allstate required exclusive agents to carry.

    e.   The expense for phones to do Allstate business, including Allstate Agency Voice, a centralized telephone system that Allstate requires exclusive agents to use.

    f.   The expense for internet access that Allstate requires all Allstate agencies must have to do business.

    g.   The expense of Allstate approved computers with Allstate software that Allstate requires to be used in the Allstate agencies.

     h.   The expense of advertising promoting Allstate's products and brand. Allstate requires agents to sell exclusively for Allstate, and Allstate must approve all advertising using its brand or name, but Allstate does not reimburse agents for this advertising.

## V.    CLASS ALLEGATIONS

93.    Class Definition: Plaintiffs bring this action on behalf of themselves and the following Classes pursuant to Code of Civil Procedure section 382: All individuals who signed an Allstate Exclusive Agency Agreement and who worked as an Allstate exclusive agent in the State of California.

94.    The Class Period is the three years immediately preceding the filing of the Complaint until such time as notice is mailed to the Class. Excluded from the Class are any judge, justice or judicial officer presiding over this matter and members of their immediate families and judicial staff.

95.    Numerosity/Ascertainability: The members of the Class are so numerous that joinder of all members would be unfeasible and not practicable. Plaintiff estimates that there are more than 700 individuals in the Class. The identity of Class members is readily ascertainable from Defendants' records.

96.    Common Questions of Law and Fact Predominate/Well Defined Community of Interest: There are common questions of law and fact which predominate over questions affecting only individual members including, without limitation to:

     a.   Whether Defendants violated Labor Code section 2802 by failing to reimburse Plaintiffs and the Class for all necessary expenditures or losses incurred by them in direct consequence of the discharge of their duties; and

     b.   Whether Defendants treated Plaintiffs and Class members as employees under Labor Code section 2802 and not independent contractors.

97.    Predominance of Common Questions: The common questions of law set forth above are substantial and stem from Defendants' policies and/or practices applicable to each individual Class member. As such, these common questions establishing Defendants' liability under the statute

1  predominate over individual questions concerning each individual Class member's amount of his or

2  her damages.

3      98.   <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Class because, as

4  alleged herein, Plaintiffs, like the members of the Classes, were employees for purposes of Labor

5  Code section 2802 and not reimbursed for all necessary work expenditures Defendants required

6  them to incur.

7      99.   <u>Adequacy of Representation</u>: Plaintiffs are fully prepared to take all necessary steps

8  to represent fairly and adequately the interests of the members of the Class. Moreover, Plaintiffs'

9  attorneys are experienced in prosecuting class actions and employee misclassification cases and are

10  committed to vigorously prosecuting this action on behalf of the members of the Class.

11      100.   <u>Superiority</u>: The California Labor Code is broadly remedial in nature and serves an

12  important public interest in establishing minimum working conditions and standards in California.

13  These laws and labor standards protect the average working employee from exploitation by

14  employers who have the responsibility to follow the laws and who may seek to take advantage of

15  superior economic and bargaining power in setting onerous terms and conditions of employment.

16  The nature of this action and the format of laws available to Plaintiffs and members of the Class

17  make the class action format a particularly efficient and appropriate procedure to redress the

18  violations alleged herein. If each employee/exclusive agent were required to file an individual

19  lawsuit, Defendants would necessarily gain an unconscionable advantage since they would be able

20  to exploit and overwhelm the limited resources of each individual plaintiff with their vastly superior

21  financial and legal resources. Moreover, requiring each member of the Class to pursue an individual

22  remedy would also discourage the assertion of lawful claims by employees, many of whom who

23  would be disinclined to file an action against their former and/or current employer for real and

24  justifiable fear of retaliation and permanent damages to their careers at subsequent employment.

25  Further, the prosecution of separate actions by the individual Class members, even if possible,

26  would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to

27  the individual Class members against Defendants herein; would establish potentially incompatible

28  standards of conduct for Defendants; and/or create inconsistent legal determinations with respect to

PLAINTIFFS' CLASS ACTION COMPLAINT

1  individual Class members which would, as a practical matter, be dispositive of the interest of the

2  other Class members or which would substantially impair or impede the ability of the Class

3  members to protect their interests. Further, the claims of the individual members of the Class are not

4  sufficiently large to warrant vigorous individual prosecution considering all of the concomitant

5  costs and expenses attendant thereto.

6      101.    As such, the Class is maintainable under Code of Civil Procedure section 382.

7  **VI.    CLAIMS FOR RELIEF**

8  <u>**COUNT ONE**</u>

9  **FOR VIOLATION OF LABOR CODE SECTION 2802**

10  **(AGAINST ALL DEFENDANTS, INCLUDING DOES 1 THROUGH 100)**

11      102.    Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as

12  though fully set forth herein.

13      103.    At all relevant times herein, Defendants were subject to Labor Code section 2802,

14  which requires employers to reimburse the expenses incurred by their employees. At all relevant

15  times herein, Defendants were also subject to Labor Code section 2804, which provides that a claim

16  under section 2802 may not be waived.

17      104.    As a proximate result of Defendants' policies and/or practices alleged above,

18  Defendants violated Labor Code section 2802 by not reimbursing Plaintiffs and members of the

19  Class for expenses they incurred to run the Allstate agencies they worked and were damaged in

20  amounts to be shown according to proof.

21      105.    Plaintiff and members of the Class are entitled to attorneys' fees and costs of suit

22  pursuant to Labor Code section 2802(c) and Code of Civil Procedure § 1021.5 for bringing this

23  action plus pre-judgment interest accruing from the date on which Plaintiffs and the Class members

24  incurred the necessary expenditure through to the date of payment. (Labor Code, § 2802(b).)

25

26

27

28

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief on behalf of themselves and the Class against the Defendants:

1.      Certification of this action as a class action and appointment of Plaintiffs and Plaintiffs' counsel to represent the Class;

2.      A declaratory judgment that Defendants violated Labor Code section 2802 by treating Plaintiffs and Class members as employees but failing to indemnify Plaintiffs and Class members for necessary business expenditures;

3.      Indemnification of the Plaintiffs' and Class Members' unreimbursed business expenses;

4.      Reasonable attorneys' fees and costs, pursuant to California Code of Civil Procedure section 1021.5 and Labor Code section 2802, and/or other applicable law;

5.      Costs of suit herein;

6.      Pre-judgment interest pursuant to Labor Code section 2802 and post judgment interest; and

7.      Such other and further relief as the Court may deem appropriate.

**JURY TRIAL DEMAND**

Plaintiffs hereby demand a trial by jury on all claims.

Dated:  March 21, 2023                          **NELSON & FRAENKEL LLP**


By: _Gretchen Barenfeld_
Gretchen M. Nelson, SBN 112566
gnelson@nflawfirm.com
Gabriel S. Barenfeld, SBN 224146
gbarenfeld@nflawfirm.com
601 S. Figueroa St., Suite 2050
Los Angeles, CA. 90017
Telephone No.: (844) 622-6469
Facsimile No.: (213) 622-6019

**CRUEGER DICKINSON LLC**
Charles J. Crueger, Esq. (PHV forthcoming)
Erin K. Dickinson, Esq. (PHV forthcoming)
Krista K. Baisch, Esq. (PHV forthcoming)
4532 North Oakland Avenue
Whitefish Bay, WI 53211
Tel.: (414) 210-3868
Email: cjc@cruegerdickinson.com
Email: ekd@cruegerdickinson.com
Email: kkb@cruegerdickinson.com

**WALLACE MILLER**
Edward A. Wallace (PHV forthcoming)
Mark R. Miller (PHV forthcoming)
150 N. Wacker Drive, Suite 1100
Chicago, IL 60606
Tel.: (312) 626-9760
Email: eaw@wallacemiller.com
Email: mrm@wallacemiller.com

*Attorneys for Plaintiffs*

Electronically Filed by Superior Court of California, County of Orange, 03/22/2023 10:57:08 AM.
30-2023-01314857-CU-OE-CXC - ROA # 3 - DAVID H. YAMASAKI, Clerk of the Court By A. Thau, Deputy Clerk.
ID #:47

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Gabriel S. Barenfeld (SBN 224146)<br>NELSON & FRAENKEL, LLP<br>601 So. Figueroa Street, Suite 2050<br>Los Angeles, CA 90017<br>TELEPHONE NO.: (844) 622-6469  FAX NO.: (213) 622-6019<br>ATTORNEY FOR *(Name):* Plaintiff | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Orange
STREET ADDRESS:  Orange County Superior Court
MAILING ADDRESS:  Civil Complex Center
CITY AND ZIP CODE:  751 West Santa Ana Blvd.
BRANCH NAME:  Santa Ana, CA 92701

CASE NAME:
Canchola, et al. v. Allstate Insurance Company

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited  ☐ Limited<br>(Amount demanded exceeds $25,000)  (Amount demanded $25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 30-2023-01314857-CU-OE-CXC<br>JUDGE: Randall J. Sherman<br>DEPT: CX105 |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☑ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☑ is  ☐ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. ☐ Large number of separately represented parties
b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. ☑ Substantial amount of documentary evidence
d. ☑ Large number of witnesses
e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):* 1. Violation of Labor Code section 2802; 2. Violation of California's Unfair Competition
5. This case ☑ is  ☐ is not  a class action suit.   Law & Business Professions Code Section 17200
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 21, 2023

Gabriel S. Barenfeld
_____
(TYPE OR PRINT NAME)

▶  *[signature]*  Gabriel Barenfeld
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
　Asbestos Property Damage
　Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
　Medical Malpractice– Physicians & Surgeons
　Other Professional Health Care Malpractice
Other PI/PD/WD (23)
　Premises Liability (e.g., slip and fall)
　Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
　Intentional Infliction of Emotional Distress
　Negligent Infliction of Emotional Distress
　Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
　Legal Malpractice
　Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
　Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
　Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
　Negligent Breach of Contract/ Warranty
　Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
　Collection Case–Seller Plaintiff
　Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
　Auto Subrogation
　Other Coverage
Other Contract (37)
　Contractual Fraud
　Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
　Writ of Possession of Real Property
　Mortgage Foreclosure
　Quiet Title
　Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
　Writ–Administrative Mandamus
　Writ–Mandamus on Limited Court Case Matter
　Writ–Other Limited Court Case Review
Other Judicial Review (39)
　Review of Health Officer Order
　Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
　Abstract of Judgment (Out of County)
　Confession of Judgment (*non-domestic relations*)
　Sister State Judgment
　Administrative Agency Award (*not unpaid taxes*)
　Petition/Certification of Entry of Judgment on Unpaid Taxes
　Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
　Declaratory Relief Only
　Injunctive Relief Only (*non-harassment*)
　Mechanics Lien
　Other Commercial Complaint Case (*non-tort/non-complex*)
　Other Civil Complaint (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
　Civil Harassment
　Workplace Violence
　Elder/Dependent Adult Abuse
　Election Contest
　Petition for Name Change
　Petition for Relief From Late Claim
　Other Civil Petition

**CIVIL CASE COVER SHEET**