UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-00734-FWS-ADS Date: July 27, 2026

Title: Jasibel Canchola *et al.* v. Allstate Insurance Company

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Rolls Royce Paschal | N/A |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [363]**

In this class action, Plaintiff Jasibel Canchola ("Canchola"), Plaintiff Carlos Ochoa ("Ochoa"), Plaintiff Richard Curtis, and Plaintiff Robert Souza (collectively, "Plaintiffs") plead claims against Defendant Allstate Insurance Company ("Allstate") for violation of California Labor Code § 2802. (*See generally* Dkt. 41 (First Amended Complaint) ¶¶ 104-07.) Before the court is Plaintiffs' Motion for Partial Summary Judgment. (Dkt. 363 ("Motion" or "Mot.").) Allstate opposes the Motion. (Dkt. 386 ("Opp.").) Plaintiffs filed a reply in support of the Motion. (Dkt. 392.) The parties' positions regarding undisputed facts are set forth in Plaintiffs' Response to the Statement of Genuine Disputes of Material Fact.[1] (Dkt. 393 ("SGD").) The court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); C.D. Cal. L.R. 7-15 (authorizing courts to "dispense with oral argument on any motion except where an oral hearing is required by statute"). Accordingly, the

[1] The court determines what constitutes an undisputed fact based on the underlying evidence, the parties' submitted statements of facts, and their responses and objections thereto. *See AFMS LLC v. United Parcel Serv. Co.*, 105 F. Supp. 3d 1061, 1071 (C.D. Cal. 2015) ("In deciding the motions for summary judgment, the [c]ourt examines the underlying evidence, not the summary statements or . . . compound paragraphs offered in the parties' statements of undisputed facts.") (citation omitted), *aff'd* 696 F. App'x 293 (9th Cir. 2017).

**hearing** set for **July 30, 2026**, (*see* Dkt. 407), is **VACATED** and **OFF CALENDAR**. Based on the state of the record, as applied to the applicable law, the Motion is **GRANTED.**

## I. Background

"Allstate sells property and casualty insurance." (SGD ¶ 1.) "Allstate's California exclusive agents form a significant part of Allstate's sales and distribution model in California." (*Id.* ¶ 2.) Allstate's California exclusive agents account for the majority of the premium Allstate earns in California. (*Id.* ¶ 3.) "Allstate uses exclusive agents . . . to distribute its insurance products and service customers in California." (*Id.* ¶ 4 (alterations in original).) Previously, the court certified a class of "[a]ll individuals who signed an Allstate R3001, R3001A, R3001S, or R3001C Exclusive Agency Agreement and who worked as an Allstate exclusive agent in the State of California during the class period." (Dkt. 159 (Class Certification Order) at 28.)[2]

Allstate appoints exclusive agents to sell insurance for Allstate. (SGD ¶ 5.) Class members signed a form R3001 known as the Exclusive Agency Agreement (the "Agreements"). (*Id.* ¶ 6.) The original Agreements were the R3001 and R3001A (for agents incorporated), and Allstate no longer offers new R3001 and R3001A Agreements. (*Id.* ¶ 7.) "Allstate currently uses Agreements it calls the R3001S (for agents that did not incorporate) and the R3001C (for agents who did form an entity), and most class members [] signed the S or C version." (*Id.* ¶ 8.)

"Allstate's Agreements incorporate by reference three manuals to make them applicable to all class members: the Exclusive Agency Independent Contractor Manual ('EA Manual'), the Allstate Agency Standards," and "the Supplement for the R3001 Agreement." (*Id.* ¶ 9.) "Allstate drafted the Agreements and the manuals, and class [members] cannot negotiate or change their terms." (*Id.* ¶ 10.) "The Agreements state that class members 'will act as an agent of the Company [Allstate] for the purpose of soliciting, selling, and servicing insurance and other Company Business in accordance with the provisions of this Agreement.'" (*Id.* ¶ 12.)

[2] All citations refer to the CM/ECF pagination.

Under these Agreements, exclusive agents are prohibited from selling insurance, either directly or indirectly, from any other company without prior written approval of Allstate. (*Id.* ¶ 13.)

"Allstate considers its 'primary relationship' to be with the class member, telling agents that 'our primary relationship *is with you*, as the agent or Key Person,' and '[o]ur communication, agency evaluation and recognition focus *is with you*, as the agent or Key Person.'" (*Id.* ¶ 14.) "Under the C Agreement, there is only one Key Person associated with the particular entity (one employer tax identification number); that person is the agent. The Key Person is the one who executes the agreement." (Dkt. 363-10 (EA Manual) at 11.) The R3001C Agreement states that the Key Person must "remain actively involved in the conduct of business at Agency's sales location." (Dkt. 363-5 (Allstate R3001C Exclusive Agency Agreement) at 3.) The R3001S Agreement similarly states that the exclusive agent must "remain actively involved in the conduct of business at your sales location." (Dkt. 363-6 (Allstate R3001S Exclusive Agency Agreement) at 3.)

"'Exclusive Agents enter into a contract to operate an agency to sell policies of Allstate and to service Allstate policyholders,' and they 'agree to sell and service only those insurance products approved by Allstate.'" (*Id.* ¶ 20.) Exclusive Agents undergo new agency-owner education experiences that include several educational programs and resources. (*Id.* ¶ 21.)

"Allstate's CEO stated in public when addressing potential investors: 'so captive agents … you know, they work only for us. They sell only for us.'" (*Id.* ¶ 22.) "During 1996[,] Allstate required the conversion of its California employee agents to independent contractor exclusive agent status because of a California law which might have required Allstate to increase the amounts of reimbursements for California employee agent expenses to unacceptable levels." (*Id.* ¶ 23.) "Allstate's form Agreements state that each class member 'will be responsible for the payment of all expenses that you incur in the performance of this Agreement including, but not limited to: expenses for your sales location, supplies not furnished by the Company, compensation of your employees or other assisting persons whom you engage, telephone, postage, and advertising expenses incurred at your direction, and all other

charges and expenses.'" (*Id.* ¶ 24.) "Allstate 'does not pay any of the expenses' the agents incur to provide 'that agent's services' under the form Agreements." (*Id.* ¶ 25.)

"All class members 'are responsible for the expenses associated with the operation of their Exclusive Agencies, including expenses for the office space for the agency, furnishing the agency, licensed and appointed staff the Exclusive Agent elects to hire, errors and omissions insurance, phones, including Allstate Agency Voice, internet access, certain computers, and advertising the Exclusive Agent elects to utilize.'" (*Id.* ¶ 26.) "Allstate's commission statements have no breakdown identifying the expense reimbursement and do not provide any means of identifying the amount being paid as reimbursement for business expenses and amounts being paid as compensation for services rendered." (*Id.* ¶ 27.)

Ochoa and Canchola "signed identical form Mutual Termination Agreements with Allstate." (*Id.* ¶ 28.) "Allstate drafted the form Mutual Termination Agreement, and the release in the Mutual Termination Agreement states that" Ochoa and Canchola "'release[] the Company from any and all claims or obligations. . . .'" (*Id.* ¶ 29.) "The Mutual Termination Agreement does not mention reimbursement of expenses, Labor Code § 2802, or make any apportionment to identify reimbursement for business expenses." (*Id.* ¶ 30.)

Allstate exclusive agents perform services, such as selling insurance and servicing customers for Allstate. (*Id.* ¶ 31.) "Allstate deducts certain expenses from the compensation it pays to class members, including Errors & Omissions Insurance (for agents who did not obtain their own policy), eAgent AMS fee, phone service (including Allstate Agency Voice), and Agency Sales Hub." (*Id.* ¶ 32.) "Allstate does not maintain comprehensive records of the class members' expenses for the office, licensed staff, and marketing." (*Id.* ¶ 33.)

## II. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the case, and the "substantive law [] identif[ies] which facts are material." *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The moving party bears the initial burden of identifying the elements of the claim or defense on which summary judgment is sought and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party will have the burden of proof at trial, the movant can satisfy its initial burden by demonstrating that there is an absence of evidence to support the non-moving party's case. *Id.* at 325; *see also Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) ("The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact.").

The non-moving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation omitted); *see also Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (In opposing summary judgment, "the non-moving party must go beyond the pleadings and by its own evidence 'set forth specific facts showing that there is a genuine issue for trial'"); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1389 (9th Cir. 1990) ("The non-moving party may not oppose summary judgment by allegations but must show specific trial-worthy facts."). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The court must draw all reasonable inferences in the non-moving party's favor. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson*, 477 U.S. at 255).

Nevertheless, "inferences are not drawn out of thin air, but from evidence." *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1247 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.

1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). "[S]ummary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48; *see also United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978) ("A summary judgment cannot be granted if a genuine issue as to any material fact exists.").

In *In re Oracle Corp.*, the Ninth Circuit described the burdens of proof in the summary judgment process:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact. Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all justifiable inferences are to be drawn in its favor.

627 F.3d at 387 (citations omitted).

## III. Analysis

Plaintiffs move for partial summary judgment against Allstate, arguing (A) the class has established that they are employees under California law, (B) the class is entitled to partial summary judgment on the issue that Allstate did not reimburse class members' expenses, and (C) the class is entitled to partial summary judgment on Allstate's Seventeenth Defense that certain named Plaintiffs and class members released their Labor Code § 2802 claims. (Mot. at 2.) The court addresses each argument in turn.

### A. Whether Plaintiffs Established That They Are Employees

Plaintiffs argue they established that Plaintiffs and the class are employees under Labor Code Section 2802, thereby shifting the burden at trial to Allstate to prove Plaintiffs and the class are independent contractors. (Mot. at 6-9.) "Allstate does not oppose Plaintiffs'[M]otion to the extent it merely seeks to confirm that Allstate will have the burden at trial on the classification issue." (Opp. at 5.)

"[O]nce a plaintiff comes forward with evidence that he provided services for an employer, the employee has established a prima facie case that the relationship was one of employer/employee." *Narayan v. EGL, Inc.*, 616 F.3d 895, 900 (9th Cir. 2010) (citing *Robinson v. George*, 16 Cal. 2d 238 (1940)). After "the employee establishes a prima facie case, the burden shifts to the employer, which may prove, if it can, that the presumed employee was an independent contractor." *Id.*

The court finds there is no genuine dispute of material fact that Plaintiffs and the class members provided services for Allstate. *See id.* "Allstate sells property and casualty insurance," (SGD ¶ 1), and "uses exclusive agents . . . to distribute its insurance products and service customers in California," (*id.* ¶ 4 (alterations in original)). Allstate appoints exclusive agents to sell insurance for Allstate, (*id.* ¶ 5), such as class members who signed the Agreements with Allstate, (*id.* ¶ 6). "'Exclusive Agents enter into a contract to operate an agency to sell policies of Allstate and to service Allstate policyholders,' and they 'agree to sell and service only those insurance products approved by Allstate.'" (*Id.* ¶ 20.) The undisputed

record reflects that Plaintiffs and class members provided services for Allstate as its exclusive agents. "One seeking to avoid liability has the burden of proving that persons whose services he has retained are independent contractors rather than employees." *S.G. Borello & Sons, Inc. v. Dep't of Indus. Rels.*, 48 Cal. 3d 341, 349 (1989). Because Plaintiffs have established that Plaintiffs and class members provided services for Allstate, the burden shifts to Allstate to prove that Plaintiffs and the class members were independent contractors. *See id.*; *Narayan*, 616 F.3d at 900. Moreover, the parties do not dispute that the issue of whether Allstate meets this burden will be an issue for trial. (*See* Mot. at 5 ("[T]he correctness of Allstate's independent contractor classification is an issue of fact for trial."); *see* Opp. at 8 ("As the party seeking to avoid liability, Allstate has the burden of proving that persons whose services [it] has retained are independent contractors rather than employees." (internal quotation marks and citation omitted)).

### B. Whether Allstate Reimbursed Plaintiffs' and Class Members' Expenses

Plaintiffs argue they are entitled to partial summary judgment on the issue that Allstate did not reimburse Plaintiffs' and the class members' expenses. (Mot. at 9-12.) Allstate responds Plaintiffs are, at most, entitled to a ruling that Allstate did not separately delineate reimbursements as required under the lump sum method. (Opp. at 9-11.)

"An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . ." Cal. Lab. Code § 2802(a). "[T]he plain language of [S]ection 2802(a) flatly requires the employer to reimburse an employee for all expenses that are a 'direct consequence of the discharge of [the employee's] duties.'" *Thai v. Int'l Bus. Machines Corp.*, 93 Cal. App. 5th 364, 371 (2023). To prevail on a Section 2802(a) claim, a plaintiff must establish the following elements: "(1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were necessary." *Nicholas Lab'ys, LLC v. Chen*, 199 Cal. App. 4th 1240, 1249 (2011) (citation and quotation marks omitted).

The court finds there is no genuine dispute of material fact that Allstate did not reimburse expenses incurred by Plaintiffs and class members. Under the Agreements, each class member "w[ould] be responsible for the payment of all expenses that [they] incur in the performance of this Agreement including, but not limited to: expenses for [their] sales location, supplies not furnished by the Company [Allstate], compensation of [their] employees or other assisting persons whom [they] engage, telephone, postage, and advertising expenses incurred at [their] direction, and all other charges and expenses." (SGD ¶ 24.) "Allstate 'does not pay any of the expenses' the agents incur to provide 'that agent's services' under the form Agreements." (*Id.* ¶ 25.) "All class members 'are responsible for the expenses associated with the operation of their Exclusive Agencies, including expenses for the office space for the agency, furnishing the agency, licensed and appointed staff the Exclusive Agent elects to hire, errors and omissions insurance, phones, including Allstate Agency Voice, internet access, certain computers, and advertising the Exclusive Agent elects to utilize.'" (*Id.* ¶ 26.) The undisputed record reflects that Allstate did not reimburse expenses in operating the agencies and that Plaintiffs and class members were responsible for expenses incurred. Accordingly, the court finds there is no genuine dispute of material fact that Allstate did not reimburse expenses to Plaintiffs and class members.

"[W]ages and expense reimbursement are conceptually distinct and subject to different statutory and sometimes also contractual constraints." *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 572 (2007). "[A]n employer may not combine the payments for both in a way that would seriously hamper or effectively preclude enforcement of the various statutory and contractual obligations." *Id.* "[T]he employer must provide some method or formula to identify the amount of the combined employee compensation payment that is intended to provide expense reimbursement." *Id.* at 573. "Because providing an apportionment method is a practical necessity for effective enforcement of [S]ection 2802's reimbursement provisions, it is implicit in the statutory scheme." *Id.* "[E]mployers that provide business expense reimbursement to employees through increases in base salary or commission rates should, in providing the documentation required by section 226, subdivision (a), separately identify the amounts that represent payment for labor performed and the amounts that represent reimbursement for business expenses." *Id.* at 574 n.6. "*Gattuso* requires communication of the apportionment method to employees in the course of business—i.e., at or near the time of

compensation— and not only if and when the employer is called upon to communicate its apportionment method in the face of a demand or legal claim." *Espejo v. The Copley Press, Inc.*, 13 Cal. App. 5th 329, 365 (2017).

The court finds there is no genuine dispute of material fact that Allstate did not separately designate reimbursements from other compensation as required under *Gattuso*. Allstate does not dispute that Allstate "'did not separately denominate amounts of sales-related compensation that would cover such business expenses.'" (*See* Opp. at 10 (quoting Mot. at 12); *see also* SGD ¶¶ 27, 33.) At trial, Plaintiffs do not need to prove that Allstate did not reimburse expenses, and Allstate is precluded from arguing that Plaintiffs and class members were properly reimbursed under *Gattuso*. However, Plaintiffs still bear the burden to prove the three elements of their Section 2802 claim at trial.

### C. Allstate's Seventeenth Defense

Plaintiffs argue that Plaintiffs and the class members are entitled to partial summary judgment on Allstate's Seventeenth Affirmative Defense because the defense relies on the Mutual Termination Agreement which does not encompass the nonwaivable statutory protections under Section 2802. (Mot. at 13-14.) Allstate responds that Allstate can rely on the Mutual Termination Agreement as a defense. (Opp. at 11-12.)

Under "[S]ection 2802, a contract provision releasing 'any and all' claims generally does not encompass nonwaivable statutory protections, and in particular does not implicitly apply to an employee's right to indemnification from the employer." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 953 (2008). The California Supreme Court has "conclude[d] that a contract provision releasing 'any and all' claims does not encompass nonwaivable statutory protections, such as the employee indemnity protection of Labor Code [S]ection 2802 and, accordingly, is not void under Labor Code [S]ection 2804." *Id.* at 955.

In *Edwards,* the California Supreme Court held that general release language waiving "'any and all' claims would not encompass the right to indemnification, because [the court] treat[ed] the [release] as expressly incorporating the law that the employee cannot waive that

right." *Id.* at 955. The California Supreme Court interpreted the release "such that it does not violate Labor Code [S]ection 2804." *Id.* at 954.

The court finds that Plaintiffs adequately demonstrate Allstate's Seventeenth Affirmative Defense is barred under *Edwards*. Ochoa and Canchola "signed identical form Mutual Termination Agreements with Allstate" which states that Ochoa and Canchola "release[] the Company [Allstate] from *any and all claims* or obligations. . . ." (SGD ¶¶ 28-29 (emphasis added).) "The Mutual Termination Agreement does not mention reimbursement of expenses, Labor Code § 2802, or make any apportionment to identify reimbursement for business expenses." (*Id.* ¶ 30.) The court finds the "any and all claims" language in the Mutual Termination Agreement does not encompass Plaintiffs' rights under Section 2802 because this indemnity right is nonwaivable and the Mutual Termination Agreement does not reference this right at all. *See Edwards*, 44 Cal. 4th at 954-55. The court is not persuaded by Allstate's interpretation that this language encompasses a settlement of Plaintiff's Section 2802 claim because the Mutual Termination Agreement does not reference Section 2802 or any dispute about expense reimbursements.

### D. Summary and Conclusion

Accordingly, the court **GRANTS** the Motion. The court grants partial summary judgment on the following issues: (1) Plaintiffs and the class members provided services for Allstate; (2) Allstate did not reimburse expenses incurred by Plaintiffs and class members; (3) Allstate did not separately designate reimbursements from other compensation as required under *Gattuso*; and (4) Allstate's Seventeenth Affirmative Defense is barred under *Edwards*. At trial, Plaintiffs bear the burden of proving the three elements of their Section 2802 claim.

## IV. Disposition

For the reasons stated above, the Motion is **GRANTED**.